**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>JACK MILLER, et al.,<br><br>Plaintiff-Intervenors,<br><br>POTOMAC RIVERKEEPER, INC.,<br><br>Plaintiff-Intervenor,<br><br>and<br><br>WASHINGTON SUBURBAN SANITARY COMMISSION,<br><br>Proposed Plaintiff-Intervenor,<br>v.<br><br>DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY, et al.,<br><br>Defendants. | Civil Action No. 26-cv-1346 |

**WASHINGTON SUBURBAN SANITARY COMMISSION'S**
**<u>SUPPLEMENTAL BRIEF ESTABLISHING ARTICLE III STANDING</u>**

Pursuant to this Court's August 26, 2026, Order, proposed Plaintiff-Intervenor Washington Suburban Sanitary Commission ("WSSC Water") respectfully submits its Supplemental Brief Establishing Article III Standing in support of its Unopposed Motion to Intervene filed on August 18, 2026. For the reasons set forth herein, WSSC Water has Article III standing, and this Court should grant WSSC Water intervention as of right or, in the alternative, permissive intervention.

## I. WSSC Water Independently Satisfies Article III Standing.

To establish Article III standing, a plaintiff must demonstrate (1) it has suffered an injury in fact that is concrete and particularized and actual or imminent, (2) the injury is fairly traceable to the challenged action of the defendant, and (3) it is likely that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The relevant showing "is not injury to the environment but injury to the plaintiff." *Friends of the Earth, Inc.*, 528 U.S. at 169. A plaintiff need not "prove the merits" of its case to demonstrate that it has Article III standing. *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009). WSSC Water satisfies all three prongs.

### A. WSSC Water Has Suffered an Injury in Fact.

An injury in fact must be an invasion of a legally protected interest which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Imminence is satisfied where "the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 n.5 (2013)). A person "exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). In the environmental context, an "increased risk of harm can itself be injury in fact sufficient for standing." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000). The "most obvious" injuries that "readily qualify as concrete injuries under Article III" are "traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC*, 594 U.S. at 425.

Here, each of WSSC Water's imminent injuries flows directly from DC Water's failure to properly operate, inspect, and maintain the Potomac Interceptor ("PI") as required by NPDES Permit No. DC0021199 (the "NPDES Permit"), Part II, Section B. That permit violation is not merely an abstract regulatory breach; it is the direct cause of imminent, concrete, and particularized harm to WSSC Water's real property and contractual obligations under the Blue Plains Intermunicipal Agreement of 2012 (the "IMA").

**1. WSSC Water Faces Imminent Injury to its Wastewater Conveyance System.**

WSSC Water faces imminent, concrete, and particularized injuries to its real property as a direct result of its legal relationship with DC Water and the PI. WSSC Water is a party to the IMA, which governs DC Water's responsibilities with respect to Blue Plains and related infrastructure, including the PI. Compl. ¶¶ 3, 48–49; IMA § 1, Key Principle 7. Under both the NPDES Permit and the IMA, DC Water bears exclusive responsibility for operating, maintaining, and managing the PI. Compl. ¶¶ 43, 49.

The PI is one of WSSC Water's primary wastewater conveyance routes to Blue Plains, with approximately 18 million gallons of its wastewater flowing through it every day, and WSSC Water's sewer collection and transmission system connects to DC Water's at more than six points of interconnection, including to the PI. Compl. ¶¶ 3–4. A disruption of the PI directly disrupts WSSC Water's ability to properly convey its customers' wastewater for treatment; indeed, it is not practicable to stop the flow of wastewater or redirect it to an alternative treatment facility. *See* Compl. ¶ 50. Moreover, WSSC Water owns and operates the physical infrastructure on its side of each of those interconnection points. Compl. ¶ 4. These are not administrative demarcations. They are physical junctions that WSSC Water owns and operates. Any modification, rehabilitation, or operational change DC Water makes to the PI at or near these junctions will require that WSSC

Water expend financial resources to evaluate, and where necessary implement, corresponding modifications to its own infrastructure to maintain system operations, control flows, and ensure continued service to its customers.

This operational injury is both actual and ongoing. The January 19, 2026, collapse already disrupted one of WSSC Water's major conveyance routes. And because DC Water has not completed all work related to the collapsed segment, Compl. ¶ 11, and the remaining high-risk segments threaten further disruption, WSSC Water faces a continuing, imminent risk that its wastewater conveyance will be impacted again. Further, the scope and timing of any injunctive relief—including what DC Water must repair, when, and to what standard—"will directly determine whether one of WSSC Water's primary wastewater conveyance routes and its own sewer collection and transmission systems operate reliably for the customers who depend on it." Dkt. 37-1 at 11–12.

The primary purpose of this litigation is to produce a consent decree or compliance schedule requiring DC Water to rehabilitate the PI, necessarily including bypass pumping, emergency response plans, or rehabilitation timelines, and that outcome will immediately require WSSC Water to incur capital expenditures. This is not a speculative contingency; rather, it is the certain and intended consequence of the relief sought in this case. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("a party facing prospective injury has standing where the threatened injury is real, immediate, and direct"); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153–54 (2010) (party had Article III standing where its injury was "caused by the very remedial order" at issue and "would be redressed" by a favorable ruling). There is no question that this imminent invasion of WSSC Water's legally protected interest by itself constitutes an injury in fact under Article III when the D.C. Circuit has recognized that even the "[p]otential

impairment" of "property rights can create an injury in fact." *Children's Health Def. v. Fed. Commc'ns Comm'n*, 25 F.4th 1045, 1049 (D.C. Cir. 2022); *see also TransUnion LLC*, 594 U.S. at 425 (physical harms "readily qualify as concrete injuries under Article III").

**2. WSSC Water Faces Imminent Injury to its Drinking Water Infrastructure.**

WSSC Water's drinking water intake infrastructure faces an equally imminent, concrete, and particularized injury. At least two additional PI segments are in condition equal to or worse than the segment that catastrophically failed on January 19, 2026. Compl. ¶ 111. DC Water's CEO testified under oath that one of these segments is an approximately 1,750-linear-foot section near the confluence of Muddy Branch and the Potomac River, located upstream of and in close proximity to WSSC Water's drinking water intake for its largest water treatment facility, which serves more than one million customers daily. Compl. ¶ 112. When that segment fails, untreated sewage containing bacterial and viral contaminants and toxic pollutants, including lead, mercury, cadmium, nickel, and PCBs, will contaminate WSSC Water's drinking water supply. Compl. ¶¶ 94, 111–12. A cursory review of the record demonstrates that this invasion of WSSC Water's legally protected interest is concrete, particularized, and imminent.

This is not speculative future harm. DC Water's inspections between 2011 and 2015 documented widespread corrosion throughout the PI, including the segment located directly upstream and in close proximity to WSSC Water's drinking water intake. Compl. ¶¶ 52–58. In 2018, DC Water's own engineers warned that failure to address it "could result in a catastrophic failure, leading to the release of raw sewage into soil, groundwater, and waterways." Compl. ¶ 55. In December 2024, thirteen months before the PI's collapse, DC Water acknowledged in its own documents that the PI "needs immediate repair" because "rapid degradation of the pipe has made it a high-priority task to prevent collapse." Compl. ¶ 56. The system then failed exactly as DC

Water's own engineers predicted. Turning specifically to the intake, DC Water's CEO confirmed under oath that the remaining compromised segments, including the one directly upstream of WSSC Water's intake, are in condition equal to or worse than the segment that already failed. Compl. ¶ 111. This unquestionably satisfies both the "certainly impending" and "substantial risk" standards as this is not a "highly attenuated chain of possibilities" amounting to mere speculation. *Clapper*, 568 U.S. at 410. Here, the adjacent segment already failed under identical conditions and DC Water confirmed the remaining segment is in equal or worse condition. Accordingly, the imminent costs and invasion of WSSC Water's legally protected interests constitute injuries in fact that are concrete, particularized, and imminent.

**3. WSSC Water Faces Financial and Contractual Injury Under the IMA.**

Injuries to WSSC Water's legally protected contractual rights are well-documented and undeniable. As already discussed in detail, WSSC Water is a contractual party to the IMA, under which DC Water bears exclusive responsibility for operating, maintaining, and managing the PI. Compl. ¶¶ 3, 48–49; IMA § 1, Key Principle 7. On March 31, 2026, DC Water issued a formal cost-allocation determination under the IMA, establishing cost code MJ82 specifically for collapse-related costs and allocating 30.9% of an estimated $59.3 million of those costs to WSSC Water while allocating 0.00% to itself.[1] That $59.3 million encompasses $11.75 million in emergency repairs, $12.1 million in PI rehabilitation, $35 million in permanent repairs, and $447,000 in emergency response measures. This is not a speculative future demand. It is a formal attempt by DC Water to impose a concrete and imminent obligation on WSSC Water to pay or

[1] This estimate is in addition to the nearly $800,000 WSSC Water has already paid in connection with this project. Pursuant to the IMA, DC Water billed WSSC Water $781,926.62 from 2020 through 2026 for planning and design costs associated with Project LZ09—a rehabilitation project for the very PI segment that collapsed—which was never built. Compl. ¶ 60; Dkt. 37-1 at 4, 12.

contest approximately $18.3 million. These costs flow directly from DC Water's failure to comply with its NPDES Permit's operation and maintenance requirements. *See Susan B. Anthony List*, 573 U.S. at 158 (injury is imminent where "certainly impending" or there is a "substantial risk" of harm); *TransUnion LLC*, 594 U.S. at 425 ("monetary harms readily qualify as concrete injuries under Article III").

That injury in fact is compounded by DC Water's invasion of WSSC Water's contractual rights under the IMA. The IMA entitles WSSC Water to wastewater conveyance through a properly maintained PI, and WSSC Water's continued right to use the PI is expressly conditioned on making its financial contribution for Capital Costs and O&M Costs, including costs specifically associated with operating and maintaining the PI. IMA § 4(A)(2)(c). WSSC Water has made those payments. DC Water, which collects them, bears exclusive responsibility for maintaining the infrastructure WSSC Water pays to use. Compl. ¶ 49. It has failed to do so. The system WSSC Water contractually depends on is demonstrably unreliable: a segment has already catastrophically failed, the PI's remediation is believed to still be incomplete, and DC Water's own CEO has confirmed under oath that additional segments are in equal or worse condition. Compl. ¶¶ 11, 111.

WSSC Water entered the IMA to secure a long-term, contractually certain right to convey its wastewater through the PI on defined operational and financial terms. That certainty has been undermined by DC Water's failure to maintain the PI and will be further altered by any decree this Court enters. The D.C. Circuit has recognized both that "[p]otential impairment" of "property rights can create an injury in fact," *Children's Health Def.*, 25 F.4th at 1049, and that even the loss of certainty afforded by a long-term contract, without proven monetary loss, constitutes a cognizable injury in fact. *Idaho Power Co. v. FERC*, 312 F.3d 454, 460 (D.C. Cir. 2002). It would be inconceivable that a party whose contractual rights are directly subject to a court order could

lack standing to participate in the proceeding that produces it. *See id.* at 461.

Under any framework this Court applies, WSSC Water's injuries are concrete, particularized, and imminent. Accordingly, the injury-in-fact requirement is satisfied.

**B. WSSC Water's Injuries Are Fairly Traceable to DC Water's Conduct.**

The traceability requirement demands only that the injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). This is "not equivalent to a requirement of proximate causation." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015). Instead, causation "requires the plaintiff to establish that the plaintiff's injury likely was caused or likely will be caused by the defendant's conduct." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). That causal connection "need not be so airtight at this stage of litigation as to demonstrate that the [plaintiff] would succeed on the merits." *Ecological Rts. Found.*, 230 F.3d at 1152.

WSSC Water's injuries are fairly traceable to DC Water's failure to comply with its NPDES Permit's operation and maintenance requirements. The causal chain is direct and unbroken. DC Water is the permit holder and party bearing exclusive responsibility under both the NPDES permit and the IMA for operating, maintaining, and managing the PI along its entire length. Compl. ¶¶ 41–43, 49. Here, each of WSSC Water's injuries is directly traceable to DC Water's failure to maintain the PI in compliance with its NPDES permit and the Clean Water Act. DC Water knew for over a decade that the PI was corroding and at risk of failure, Compl. ¶¶ 51–58, admitted it did not use traditional or industry-accepted methods to inspect the PI or rate its defects, *id.* ¶ 65, yet cancelled the rehabilitation procurement and failed to implement any interim safeguards the NPDES Permit required. *Id.* ¶¶ 62, 69. Each of these failures flows directly and

without interruption to WSSC Water's injuries. There are no independent third-party actors whose intervening choices break the causal chain. *See Lujan*, 504 U.S. at 560–61. WSSC Water satisfies the causation prong for each of its identified injuries.

**C. WSSC Water's Injuries Are Redressable by the Relief Sought.**

The analysis of redressability is straightforward: if a plaintiff secured the relief it sought, would it redress the injuries? *See Seed v. Env't Prot. Agency*, 100 F.4th 257, 263 (D.C. Cir. 2024) (*quoting Wilderness Soc'y v. Norton*, 434 F.3d 584, 590 (D.C. Cir. 2006)). Full redress of an injury is not required because "the ability to effectuate a partial remedy satisfies the redressability requirement." *Idaho Conservation League v. Bonneville Power Admin.*, 83 F.4th 1182, 1191 (9th Cir. 2023). The Supreme Court of the United States has further clarified that if a "defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *FDA*, 602 U.S. at 381.

Here, a favorable decision in this action will directly redress each of WSSC Water's injuries. WSSC Water seeks injunctive relief compelling DC Water to cease unauthorized discharges, repair the remaining high-risk PI segments, and properly operate and maintain the PI in compliance with its NPDES Permit. Compl., Prayer ¶¶ B–E. An order requiring DC Water to rehabilitate the PI would directly redress the imminent threat to WSSC Water's drinking water intake, protect WSSC Water's interconnection infrastructure, and ensure WSSC Water's continued ability to serve its customers. WSSC Water's participation also ensures that any consent decree or compliance schedule entered by this Court adequately addresses its specific operational interests, including repair of the Muddy Branch segment and protection of its infrastructure, and would allow WSSC Water to manage its financial exposure under the IMA.

## II. **The Supreme Court Decisions in *Little Sisters* and *Town of Chester* Provide That an Intervenor Seeking the Same Relief as a Party Need Not Establish Independent Article III Standing.**

As set forth above, WSSC Water has Article III standing sufficient to warrant intervention; however, pursuant to authority from the United States Supreme Court, this Court could permit intervention without an independent finding of standing. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020). In that case, the Supreme Court held that an intervenor need not establish independent Article III standing when it seeks the same relief as a party that has standing. *Id.; see also Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439–40 (2017).

This Court's August 26 Order flagged tension in the D.C. Circuit precedent on this issue. In *Institutional Shareholder Services, Inc. v. SEC*, 142 F.4th 757, 764 (D.C. Cir. 2025), the D.C. Circuit recognized the rule established by *Little Sisters* and *Town of Chester* but noted that the rule is "in tension with" prior D.C. Circuit authority. In the underlying case, the district court determined that the intervenor did not need to establish independent standing, but, ultimately, the D.C. Circuit declined to resolve the identified tension because the intervenor had to establish standing for the appeal. *Id.* Here, the Court can determine that, following the holding in *Little Sisters* and *Town of Chester*, as recognized by the D.C. Circuit in *Institutional Shareholder Services*, an intervenor seeking the same relief as another party (as is the case here) need not establish independent standing. Regardless, for the reasons set forth in Section I, WSSC Water has independent standing.

## CONCLUSION

WSSC Water has demonstrated concrete, particularized, and imminent injuries, direct traceability to DC Water's permit violations, and full redressability through the relief this Court has authority to grant. Therefore, this Court should grant WSSC Water's Unopposed Motion to Intervene as Plaintiff.

Respectfully submitted, this 9th day of September 2026.

**TROUTMAN PEPPER LOCKE LLP**

/s/ *Toyja E. Kelley*
Toyja E. Kelley, Sr. (DC Bar No. 482977)
Troutman Pepper Locke LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: 202-220-6900
Facsimile: 202-220-6945
toyja.kelley@troutman.com

Lindsey B. Mann (*pro hac vice application forthcoming*)
lindsey.mann@troutman.com
E. Fitzgerald Veira (*pro hac vice application forthcoming*)
fitzgerald.veira@troutman.com
Jack M. Ryan (*pro hac vice application forthcoming*)
jack.ryan@troutman.com
Troutman Pepper Locke LLP
600 Peachtree Street, N.E., Suite 3000
Bank of America Plaza
Atlanta, Georgia 30308-2216
(404) 885-3000 (phone)

*Counsel for Proposed Plaintiff-Intervenor WSSC Water*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 9, 2026, I electronically filed a true and correct copy of **WASHINGTON SUBURBAN SANITARY COMMISSION'S SUPPLEMENTAL BRIEF ESTABLISHING ARTICLE III STANDING** with the Clerk of Court using the CM/ECF system which will automatically send email notifications of this filing to all counsel of record.

*/s/ Toyja E. Kelley*
Toyja E. Kelley